IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MOLINA INFORMATION SYSTEMS, LLC, )
a California Limited Liability Company, )
                             )
             Plaintiff, )
                             )
v.                            )  C.A. No. _____
                             )
UNISYS CORPORATION, a Delaware )
Corporation, )
                             )
             Defendant. )

## COMPLAINT

       Plaintiff Molina Information Systems, LLC ("Molina"), by and through its undersigned counsel, alleges the following against Defendant Unisys Corporation ("Unisys"):

## NATURE OF THE CLAIM

       1.    This action arises out of Unisys's material misrepresentations and breaches of contract in connection with Molina's acquisition of one of Unisys's divisions, a Health Information Management ("HIM") business.

       2.    On January 18, 2010, Molina Healthcare, Inc. ("Molina Healthcare") entered into an Asset Purchase Agreement with Unisys (the "Agreement")[1] whereby Molina Healthcare acquired the HIM business at a cost of approximately $131 million.

       3.    Among other things, Unisys represented in the Agreement that as of the May 1, 2010 closing date (the "Closing"): (1) there were no facts or circumstances then

---

[1] A true and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein by reference

existing that could reasonably be expected to have a material adverse effect on the HIM business; (2) Unisys was not in breach of any material agreements; (3) Unisys had transferred to Molina Healthcare all assets necessary to conduct the business in the same manner as it had been conducted by Unisys; and (4) Unisys had not received notice of any material service or performance problems or deficiencies with any products or services being sold to Molina.   Unisys also agreed that it would provide Molina reasonable access to investigate Unisys's business, and would notify Molina of any occurrences prior to the Closing that Unisys would otherwise have been required to disclose.

4.     Molina reasonably relied on these representations when it agreed to purchase the HIM business.  However, as alleged further below, after Closing it became apparent that Unisys had made numerous misrepresentations in the Agreement, and had breached many of the Agreement's warranties and covenants.

5.     Unisys's most glaring misconduct involved a contract with the state of Idaho (the "Idaho Contract") that Molina Healthcare had assumed under the Agreement. The Idaho Contract required Unisys (and later Molina) to design, develop, implement and operate Idaho's Medicaid Management Information Systems ("MMIS"), a system used by Idaho's Medicaid agencies to process Medicaid claims.

6.     The Idaho MMIS commenced live operations on June 1, 2010, one month after Closing, because Unisys had unilaterally obligated MMIS to commence live operations on that date.  Soon after live operations began, Molina discovered a number of defects and problems with the Idaho MMIS.  The most serious defects were the result of

Unisys's failure to input a majority of the information required to properly run the MMIS and to complete modifications and system testing prior to Closing.  Consequently, the Idaho MMIS experienced material problems, including costly Medicaid enrollment delays, inaccurate communications to health providers, and incorrect transactions processing.

7.     Unisys failed to disclose other defects with the Idaho MMIS, including Unisys's miscoding of a testing file that resulted in 2,350 individuals receiving payment refunds to which they were not entitled and Unisys's misclassification of non-exempt employees as exempt, thus exposing Molina to legal action and financial liability for back pay.

8.     Not only did Unisys fail to disclose these defects, as required by the Agreement, but Unisys also actively encouraged its senior management to limit the flow of information to Molina and Molina Healthcare by threatening them with personal liability if their actions derailed the deal.

9.     Molina (as Molina Healthcare's assignee to the Agreement[2]) now brings this action against Unisys for breach of contract, intentional misrepresentation, and negligent misrepresentation in order to obtain indemnification, damages, and other relief for the substantial harm that has resulted from Unisys's conduct as herein alleged.

---

[2] The Agreement authorized Molina Healthcare to assign its rights under the Agreement to any wholly-owned subsidiary and provided that, in the event of assignment, Molina Healthcare's rights would inure to the benefit of its assignee.  (Ex. A, § 12.12).  On April 29, 2012, Molina Healthcare assigned the Agreement to Molina.

{A&B-00211598-}                          -3-

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

11.     This Court has personal jurisdiction over Defendant Unisys because, upon information and belief, Unisys is a business incorporated in Delaware.

12.     Venue is proper within this District under 28 U.S.C. §§ 1391(b)(1) and (c)(2).

## THE PARTIES

13.     Molina is a limited liability company formed under the laws of California with its principal place of business in Long Beach, California.  Molina provides design, development, implementation, and business process outsourcing solutions to state governments for their Medicaid information systems.   Molina is a wholly-owned subsidiary of Molina Healthcare.

14.     Unisys is a business incorporated under the laws of Delaware with its principal place of business in Blue Bell, Pennsylvania.  Upon information and belief, Unisys is an information systems company that designs, builds, and manages information systems for companies.   Unisys represents itself on its web site as having "a deep understanding of high-volume, transaction-intensive, and secure computing" and targets its services to businesses and governments "who have no room for error."

## GENERAL ALLEGATIONS

## Molina and Unisys Enter into the Agreement

15.     On January 18, 2010, Molina Healthcare and Unisys entered into the Agreement, whereby Molina Healthcare agreed to purchase Unisys's HIM business. Unisys's HIM business provided system solutions and business process outsourcing services to state governments for administration of their Medicaid and other state health care entitlement programs.  The Idaho Contract was one of several state MMIS contracts managed by Unisys as part of the HIM business that was acquired by Molina Healthcare in the Agreement.

16.     Pursuant to the Agreement, Unisys warranted:

    a.     That there were no material liabilities related to its HIM business that were not fully reflected in its balance sheet, except for those incurred after the date of its latest balance sheet. (Ex. A, § 5.6);

    b.     That, to its knowledge, no event, development, or state of circumstances or facts had occurred that could reasonably be expected to result in a material adverse effect on HIM's operations, or that any condition, event, or occurrence had occurred that, individually or in the aggregate, could reasonably be expected to prevent or delay Unisys from performing its obligations under the Agreement. (Ex. A, § 5.7(a));

    c.     That the HIM business's fixed assets were in good working condition and that Unisys would transfer to Molina Healthcare

good and valid title to the fixed assets, free and clear of all liens. (Ex. A, § 5.8(a));

d.   That Unisys was not in material default or material breach of any contract that it had with various state governments, including the Idaho Contract.  (Ex. A, § 5.9(c));

e.   That, except as disclosed to Molina, there were no legal proceedings pending or threatened against or initiated by Unisys related to the HIM business that could materially and adversely affect the business.  (Ex. A, § 5.10);

f.   That the assets transferred included all of the assets necessary for Molina to conduct the HIM business immediately after Closing in the same manner as the business had been conducted by Unisys in all material aspects. (Ex. A, § 5.11);

g.   That the HIM business was and had at all times been materially compliant with all applicable laws respecting employment and employment practices, terms and conditions of employment, classification of employees and independent contractors, wages, hours of work, immigration, civil rights, and occupational safety and health. (Ex. A, § 5.15(d));

h.   That Unisys was in material compliance with all laws applicable to the HIM business. (Ex. A, § 5.17); and

      i.      That Unisys had not received notice regarding any unresolved material service or performance problems or deficiencies or unresolved material claims with respect to any product or services. (Ex. A, § 5.21).

17.     Pursuant to the Agreement, Unisys covenanted to provide Molina Healthcare with the right to investigate Unisys's business and to promptly advise Molina and Molina Healthcare of any occurrence, change, or event prior to Closing which Unisys would otherwise have been required to disclose.  (Ex. A, §§ 7.2, 7.12).

18.     The Agreement provided that, as of Closing, (i) the representations and warranties made by Unisys in the Agreement would be true and correct in all respects, (ii) Unisys would have complied in all material respects with the covenants contained in the Agreement, and (iii) at least 85% of the HIM business employees to whom Molina Healthcare had made employment offers would have accepted those employment offers. The Agreement further provided that, between the date of signing and the date of Closing, there would be no material adverse effects on the HIM business.  (Ex. A, § 9.2(a)-(d)).

19.     The Agreement obligates Unisys to indemnify Molina from any actual losses, liabilities, damages, claims, suits, proceedings, judgments, settlements, and expenses arising out of or resulting from Unisys's breach of the representations, warranties, covenants or agreements in the Agreement. (Ex. A, § 11.2).

20.     The Agreement provides that the Agreement shall be governed by, and construed in accordance with, Delaware law without regard to conflict of law principles. (Ex. A, § 12.7).

**Unisys Conceals Serious Defects With The Idaho MMIS**

21.     In order to prepare an MMIS for operation, a multitude of technological systems must be developed and tested prior to implementation, a process that can take years.  Only after this comprehensive battery of testing is complete is an MMIS ready to "go live" or be operational for the processing of data and Medicaid claims.

22.     Throughout the due diligence process, Unisys's senior management represented to Molina Healthcare and Molina that the Idaho MMIS was "on track" for its June 1, 2010 "go live" date and was experiencing successful design, development, and implementation.   A May-June 2010 Idaho MMIS Implementation Decision Matrix provided to Molina by Unisys described Unisys's progress in preparing the Idaho MMIS to go live, including the entry of healthcare providers and Healthy Connection members, as "on track" and "ready."

23.     These representations were patently untrue.   Indeed, the Idaho MMIS suffered from numerous defects, compounded by Unisys's faulty pre-Closing testing, that have caused significantly delays in the Idaho MMIS's "go live" date.   Among other things, (i) Unisys had failed to develop a specific plan for testing certain aspects of the Idaho MMIS; (ii) most of the testing had not been completed; (iii) some of the testing had been performed while the Idaho MMIS was still under construction and was thus

unreliable; (iv) artificial test cases had been used, as opposed to the required production data; and (v) certain tests had been approved as "completed" before they were complete.

24.     Furthermore, in late April 2010, less than two weeks before the Closing, over 2,500 of the approximately 3,600 test data claims had either not yet been tested or had experienced "issues" in testing.

25.     Unisys was well aware of the problems with the Idaho MMIS.   For example, Unisys's senior management received periodic reports detailing the lack of progress in the user acceptance testing ("UAT").   A March 2, 2010 Unisys Executive Sponsor Committee Meeting report states that "3154 [UAT cases] remain, 538 have been executed over the first 6 weeks.   At this rate only 500 more would be executed in the UAT window."   In other words, only about *one-third* of the necessary testing would be completed by the go-live date.

26.     Unisys was also aware that the vast majority of providers and other critical information would not be loaded into the Idaho MMIS before the "go live" date.   Prior to Closing, Unisys management was informed that 50 to 80 percent of the healthcare providers and up to 80 percent of the participants would not be loaded into the system by the June 1, 2010 go-live date.

27.     Despite being obligated under the Agreement to disclose these issues, Unisys disclosed none of these problems to Molina Healthcare or to Molina prior to Closing.

28.     Moreover, Unisys encouraged its employees to withhold negative information and documents about the progress of the Idaho MMIS from Molina during

Molina's pre-Closing due diligence.   Among other things, Unisys encouraged certain employees to withhold documents and other materials from Molina Healthcare that would have alerted Molina Healthcare to the numerous problems with the Idaho MMIS.

### Unisys Conceals a Mistake by Its Subcontractor That Causes Molina to Incur $3.2 Million in Erroneous Medicaid Payments

29.     Prior to Closing, Unisys sub-contracted with SDI Health, a healthcare data product provider, to develop a platform for Idaho's "buy-in" program, a program that provides Medicaid benefits to working individuals with disabilities.   On or around April 2010, an SDI employee negligently sent a buy-in platform test file (which was incorrectly marked as a production file), instead of a production file with accurate data, to the Center for Medicare and Medicaid Services ("CMS"), a federal agency that partners with state governments to administer Medicaid.   The subcontractor reported directly to the Unisys Central Engineering DMG group, and Unisys oversaw and controlled his work at all times and was responsible for that work.   This error resulted in erroneous Medicaid payments to 2,350 individuals, totaling approximately $3.2 million.   Unisys was well aware of this costly error and corresponded with SDI regarding the error as early as April 19, 2010 – several weeks before Closing.   Unisys failed, however, to rectify the error or disclose its existence to Molina Healthcare or to Molina prior to Closing.   CMS now seeks to recover these erroneously paid funds from Molina.

### Unisys Improperly Classified Its Employees and Failed to Pay Required Overtime

30.     Unisys also failed to comply with all applicable labor laws regarding the proper classification of its employees prior to Closing, causing Unisys to, among other things, fail to pay required overtime to several of its employees who now work for

Molina.  Upon discovering this error, Molina conducted a comprehensive investigation of the exempt/non-exempt classification of all former Unisys employees who transferred to Molina as a result of the HIM acquisition and identified numerous employees who had been misclassified and were entitled to back pay for the years that they worked for Unisys.

### Unisys Conceals That It Had Failed to Maintain Adequate Disaster Recovery Capabilities

31.     The Idaho Contract required Unisys to establish and maintain a disaster recovery plan.  Despite these requirements, Unisys maintained inadequate and deficient disaster recovery capabilities that would not ensure the timely resumption of necessary functions in the event of a disaster and did not have the requisite capacity.

32.     Despite being obligated under the Agreement to disclose this issue, none of these facts were disclosed to Molina Healthcare or to Molina prior to Closing.

### Defects in the Idaho MMIS Expose Molina to Substantial Liability

33.     On October 5, 2010, the Idaho Department of Administration issued Molina a formal notice to cure letter requiring Molina to correct the numerous problems that the Idaho MMIS was experiencing as a result of Unisys's undisclosed pre-Closing conduct.  In June 2011, after significant efforts and expenditures to cure these defects, Molina reached an agreement with the Idaho Department of Health and Welfare ("DHW") pursuant to which Idaho offset approximately $4 million in damages against Molina's past and future invoices.    In addition to the offsets, Molina incurred approximately $20.7 million in payments to outside consulting companies and expended another $5.7 million of its own resources to correct the defects in the Idaho MMIS.

34.     Additionally, the Idaho MMIS system defects disrupted payments to healthcare providers, causing Idaho to issue bridge or interim payments to the healthcare providers in order to ensure continuation of medical services.  Idaho now asserts that it has been unable to recover approximately $2.2 million of these bridge payments and has informed Molina that it will assert claims against it for the amount of the unrecovered interim payments.

35.     After Closing, CMS commenced an administrative action against Idaho to recover the $3.2 million in erroneous payment refunds it sent to individuals as a result of Unisys's file transfer error.  Idaho has informed Molina that it will assert a claim against Molina for any liability it incurs from the CMS administrative action.

36.     Additionally, in October 2011, a former Unisys employee gave Molina notice that he intends to file a legal action against Molina asserting that he was improperly classified under the Fair Labor Standards Act.  To the extent that this former employee successfully asserts such a claim, it is due solely to the fact that Unisys misclassified the employee prior to Closing.

37.     As a result of Unisys's failure to implement a disaster recovery program that complied with the terms of its contract with Idaho, Molina was forced to expend considerable funds to improve the Idaho MMIS's disaster recovery capacity.

## COUNT ONE – BREACH OF CONTRACT

38.     Plaintiff Molina hereby incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs.

39.     The Agreement is a valid and binding contract enforceable against Unisys.

40.     Pursuant to the terms of the Agreement, Unisys warranted, among other things: (i) that it did not have material liabilities related to the HIM business that were not fully reflected in its balance sheet; (ii) that to its knowledge, no circumstances had occurred that could reasonably be expected to prevent Unisys from performing its obligations under the contract; (iii) that Unisys was not in material breach of the Idaho Contract; (iv) that the assets transferred in the HIM acquisition were in good working condition and included all of the assets necessary for Molina to conduct the HIM business immediately after Closing in the same manner that Unisys had conducted the business prior to Closing; (v) that, except as disclosed, there were no legal proceedings pending or threatened against Unisys related to the HIM business that could materially and adversely affect the business; (vi) that Unisys had not received notice regarding unresolved, material service or performance problems or deficiencies with respect to any product or services; and (vii) that Unisys was in compliance with all laws applicable to the HIM business, including employment laws.

41.     Pursuant to the terms of the Agreement, Unisys also covenanted (i) to provide Molina Healthcare and Molina with the right to investigate Unisys's business; and (ii) to promptly advise Molina Healthcare and Molina of any occurrence, change, or event prior to Closing that Molina would otherwise have been required to disclose.

42.     Pursuant to the terms of the Agreement, Unisys agreed, among other things, (i) that at Closing, the representations and warranties made by Unisys in the Agreement would be true and correct in all respects and that Unisys would have complied in all material respect with the covenants contained in the Agreement and (ii) that

between the date of signing and the date of closing, there were no material adverse effects.

43.     Unisys breached all of these warranties, covenants, and representations.

44.     Molina has fully performed its obligations under the terms of the Agreement, except for those obligations where its performance was excused.

45.     As a proximate result of Unisys's breaches of contract, Molina has suffered, and will continue to suffer, damages in an amount to be proven at trial.  Molina seeks compensation for all damages and losses proximately caused by these breaches.

### COUNT TWO – INTENTIONAL MISREPRESENTATION
### (COMMON LAW FRAUD)

46.     Plaintiff Molina incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs.

47.     As set forth in the previous paragraphs, Unisys made numerous false representations in the Agreement.

48.     Unisys made these misrepresentations knowingly or with reckless indifference as to their falsity.

49.     Unisys made these misrepresentations in order to induce Molina Healthcare to enter into the Agreement and to induce Molina to assume the obligations in the Agreement with knowledge and reason to believe that Molina, as a wholly-owned subsidiary of Molina Healthcare, would assume Molina Healthcare's obligations in the Agreement.

50.     Molina justifiably relied on Unisys's false representations when it decided to close on the Agreement.

51.     As a proximate result of Molina's justifiable reliance on Unisys's misrepresentations and omissions, Molina has suffered, and will continue to suffer, damages in an amount to be proven at trial.  Molina seeks compensation for all damages and losses proximately caused by Unisys's fraud.

### COUNT THREE – NEGLIGENT MISREPRESENTATION

52.     Plaintiff Molina incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs.

53.     As set forth in the previous paragraphs, Unisys made numerous false representations in the Agreement.

54.     Unisys had no reasonable basis to believe that these misrepresentations were true.

55.     Unisys made these misrepresentations in order to induce Molina Healthcare to enter into the Agreement and to induce Molina to assume the obligations in the Agreement with knowledge and reason to believe that Molina, as a wholly-owned subsidiary of Molina Healthcare, would assume Molina Healthcare's obligations in the Agreement.

56.     Molina was ignorant of the true facts concerning the status of the Idaho MMIS and justifiably relied on Unisys's false representations when it decided to close on the Agreement.

57.     As a proximate result of Molina's justifiable reliance on Unisys's misrepresentations and omissions, Molina has suffered, and will continue to suffer,

damages in an amount to be proven at trial.  Molina seeks compensation for all damages and losses proximately caused by Unisys's fraud.

**COUNT FOUR – DECLARATORY RELIEF AND INDEMNIFICATION**

58.     Plaintiff Molina incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs.

59.     The Agreement is a valid and binding contract enforceable against Unisys.

60.     Section 11.2 of the Agreement obligates Unisys to indemnify Molina from any actual losses, liabilities, damages, claims, suits, proceedings, judgments, settlements, and expenses arising out of or resulting from Unisys's breach of the representations, warranties, covenants or agreements in the Agreement.

61.     Molina is entitled to a declaratory judgment that Unisys must indemnify Molina, according to the procedure set forth in Section 11.4 of the Agreement, for any actual losses, liabilities, damages, claims, suits, proceedings, judgments, settlements, and expenses arising out of or resulting from any claims brought against Molina by the State of Idaho in connection with the Idaho MMIS or by former employees of Unisys in connection with the misclassification of their exempt/non-exempt status.

**PRAYER FOR RELIEF**

WHEREFORE, Molina respectfully requests that the Court enter an order:

a.     Declaring that Unisys has breached the warranties, covenants, and promises in the Agreement;

b.     Declaring that Unisys has breached the implied covenant of good faith and fair dealing;

c.      Declaring that Unisys made fraudulent misrepresentations and omissions to Molina;

d.      Declaring that Unisys must indemnify Molina, according to the procedure set forth in Section 11.4 of the Agreement, for any actual losses, liabilities, damages, claims, suits, proceedings, judgments, settlements, and expenses arising out of or resulting from any claims brought against Molina by the State of Idaho in connection with the Idaho MMIS or by former employees of Unisys in connection with the misclassification of their exempt/ non-exempt status;

e.      Awarding Molina damages, including compensatory and punitive damages, and lost profits in an amount to be proven at trial;

f.      Awarding Molina pre- and post-judgment interest;

g.      Ordering Unisys to indemnify Molina for fees, expenses, penalties, fines, and damages paid for any claims or actions brought by Idaho against Molina related to the defects in the Idaho MMIS and/ or the contract between Idaho and Unisys;

h.      Ordering Unisys to indemnify Molina for any back wages, damages, and penalties paid by Molina as a result of Unisys's misclassification of certain of its former employees as exempt from applicable wage-hour laws; and

i.      Granting such other relief as the Court may deem proper.

/s/ A. Thompson Bayliss

OF COUNSEL:

A. Thompson Bayliss (DE Bar # 4379)
ABRAMS & BAYLISS LLP

James N. Kramer
Christin J. Hill
ORRICK, HERRINGTON &
SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

20 Montchanin Road, Suite 200
Wilmington, DE 19807
bayliss@abramsbayliss.com
Telephone:  (302) 778-1000
Facsimile:   (302) 778-1001

*Attorneys for Plaintiff Molina Information
Systems, LLC*

Dated:  August 8, 2012