IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOLINA INFORMATION SYSTEMS, LLC, a California Limited Liability Company<br><br>Plaintiff;<br><br>v.<br><br>UNISYS CORPORATION, a Delaware Corporation<br><br>Defendant. | Civil Action No. 1:12-cv-01022-RGA |

MEMORANDUM OPINION

A. Thompson Bayliss, Esq., ABRAMS & BAYLISS LLP, Wilmington, DE; James N. Kramer, Esq., ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, CA; Michael C. Tu, Esq., ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, CA.

    Attorneys for Plaintiff Molina Information Systems, LLC

Joanna J. Cline, Esq., PEPPER HAMILTON LLP, Wilmington, DE; Christopher B. Chuff, Esq., PEPPER HAMILTON LLP, Wilmington, DE; Robert L. Hickok, Esq., PEPPER HAMILTON LLP, Philadelphia, PA; Ryan E. Peters, Esq., PEPPER HAMILTON LLP, Philadelphia, PA.

    Attorneys for Defendant Unisys Corporation

September 14, 2016

*[signature: Richard G Andrews]*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendant's Motion for Summary Judgment (D.I. 258) and related briefing (D.I. 259, 284, 292), Plaintiff's Cross-Motion for Summary Judgment (D.I. 283) and related briefing (D.I. 284, 292, 304), and Defendant's Motion for Leave to File a Surreply in Support of Defendant's Motion for Summary Judgment (D.I. 306). For the reasons set forth below, Defendant's Motion for Summary Judgment (D.I. 258) is **DENIED**. Plaintiff's Cross-Motion for Summary Judgment (D.I. 283) is **GRANTED**. Defendant's Motion for Leave to File a Surreply in Support of Defendant's Motion for Summary Judgment (D.I. 306) is **DISMISSED** as moot.

## I. BACKGROUND

On May 6, 2009, Molina Information Systems, LLC and Unisys Corporation entered into a Confidentiality Agreement ("CA") pursuant to Molina's potential acquisition of Unisys's Health Information Management ("HIM") division. (D.I. 259, Ex. C). On January 18, 2010, the parties entered into an Asset Purchase Agreement ("APA"), which, upon closing on April 30, 2010, transferred Unisys's HIM division to Molina. (D.I. 259, Ex. A). As discussed more fully below, the CA includes an anti-reliance provision, but the APA does not.

In its Second Amended Complaint, Molina asserts four counts against Unisys: common law fraud, negligent misrepresentation, breach of contract, and an action seeking declaratory relief. (D.I. 36). On October 30, 2013, Unisys moved to dismiss the Second Amended Complaint in its entirety. (D.I. 39). On September 2, 2014, the court granted the Motion to Dismiss with respect to Count II (Negligent Misrepresentation) but denied the motion as to Counts I, III, and IV. (D.I. 47, 48). The parties now cross-move for partial summary judgment as to Count I (Intentional Misrepresentation/Common Law Fraud) of the Second Amended Complaint. (D.I. 258, 283).

1

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could

return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. ANALYSIS

### A. The Parties' Cross-Motions for Partial Summary Judgment

Jurisdiction is based on diversity. The parties agree that Delaware law controls. The dispute in the cross-motions is whether Molina can premise its fraud claim on certain "extra-contractual" written statements made between the signing of the APA and the date of closing. Unisys argues Molina is prohibited from doing so by "anti-reliance" provisions in the agreements.

Delaware courts will enforce anti-reliance provisions "that define those representations of fact that formed the reality upon which the parties premised their decision to bargain." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1058 (Del. Ch. 2006). Due to the strong public policy against fraud, however, courts will not bar fraud claims based solely on "merger or integration clauses that do not clearly state that the parties disclaim reliance upon extra-contractual statements." *Id.* In its Motion for Summary Judgment, Unisys points to several provisions in both the CA and the APA that it argues add up to a clear anti-reliance clause.

*1. Paragraph 9 of the Confidentiality Agreement*

Paragraph 9 of the CA provides that Molina:

> understand[s] and acknowledge[s] that neither Unisys nor any of its directors, officers, advisors, representatives or employees are making any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information, and nothing contained herein or in the Confidential Information is intended to be, or shall be relied upon as, a promise, representation or warranty, whether as to the past or the future. Only those representations or warranties that are made in a written definitive agreement, if, when and as executed and delivered,

3

and subject to such limitations and restrictions as may be specified therein, will have any legal effect.

(D.I. 259, Ex. C, ¶9). Delaware courts have upheld agreements containing similar language, finding that such provisions bar extra-contractual fraud claims. *RAA Mgmt., LLC v. Savage Sports Holdings, Inc.,* 45 A.3d 107, 115 (Del. 2012).

In *RAA*, for example, the court held that virtually identical language barred a potential buyer from bringing an extra-contractual fraud claim on the basis of alleged misrepresentations made by the seller during the due diligence period. *Id.* at 110. *RAA* is distinguishable from the instant case, however, in that the parties in *RAA* did not complete the transaction, and thus never entered into a purchase agreement. *Id.* at 111. The trial court in *RAA* interpreted the provision to mean that the prospective buyer "expressly disclaimed reliance on the accuracy or completeness of any information provided to RAA in the course of due diligence." *Id.* at 112. The buyer was thus "limited to a claim arising out of a completed transaction, based on the representations and warranties [Seller] would make in a final, definitive sale agreement." *Id.*

As in *RAA*, the CA provision at issue here contemplates that the parties might enter into a final sales agreement, providing that "[o]nly those representations or warranties that are made in a written definitive agreement, if, when and as executed and delivered, and subject to such limitations and restrictions as may be specified therein, will have any legal effect." Therefore, because the parties in this case did ultimately enter into "a written definitive agreement," Paragraph 9 of the CA, standing alone, does not operate as an anti-reliance provision barring an extra-contractual fraud claim based on representations or warranties made pursuant to the final sales agreement. Rather, the CA and the APA must be read together.

4

2. *Sections 5.26 and 12.5 of the APA*

Unisys also asserts that Section 5.26 of the APA imposes limitations on the statements Molina is entitled to rely on. (D.I. 259, p. 17). Section 5.26 of the APA provides that

> Except for the representations and warranties expressly contained in this Article V or in any other document or instrument delivered by Seller pursuant to this Agreement, neither Seller, nor any other Person makes any other express or implied representation or warranty on behalf of Seller, including any representation or warranty as to the probable success or profitability of the ownership, use or operation of the Business or the Assets by Buyer after the Closing.

(D.I. 259, Ex. A, pp. 36-37). Section 12.5 of the APA is a merger clause specifying that the "Agreement, the Schedules and Exhibits, the Confidentiality Agreement and the other Transaction Documents set forth the entire understanding of the parties, and supersede all prior agreements and understandings, both written and oral, with respect to the subject matter hereof (other than the Confidentiality Agreement)." (*Id.* at p. 59). Even taken together, these provisions do not amount to an unambiguous disclaimer of reliance on extra-contractual statements.

While there are no "magic words" required of an effective anti-reliance provision, there are important concepts that must be clearly stated. *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015). A statement in a sales agreement that the seller is not making express representations outside of the agreement is not sufficient to preclude an extra-contractual fraud claim by the buyer. *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 859 (Del. Ch. 2016). Rather, what is required is an "affirmative expression by Buyer of (1) specifically what it was relying on when it decided to enter the Merger Agreement or (2) that it is was [sic] not relying on any representations made outside of the Merger Agreement." *Id.* at 860 (emphasis omitted).

5

Neither Section 5.26 nor Section 12.5 of the APA contain any affirmative statements by Molina disclaiming reliance on extra-contractual representations. Therefore, these sections do not combine to create a clear anti-reliance clause.

*3. Incorporation of the CA into the APA*

Although the APA itself does not contain an anti-reliance provision, Unisys argues that Paragraph 9 of the CA is "expressly incorporated into the APA" through sections 7.3 and 12.5 of the APA. (D.I. 259, p. 15). Section 7.3 of the APA requires Molina to "hold in confidence and treat all confidential information of Seller and its Affiliates . . . in accordance with the provisions of" the CA. (D.I. 259, Ex. A, p. 40). As discussed above, Section 12.5 is a merger clause that specifies that the CA is part of the "entire understanding of the parties." (*Id.* at p. 59).

The flaw in this argument is that the CA itself contemplates that representations and warranties would be made pursuant to the APA and that those representations and warranties would have "legal effect," meaning that Molina would be entitled to rely on them. The APA addresses the Seller's representations and warranties in Article V, which provides a list of express representations and warranties. (D.I. 259, Ex. A, pp. 23-37). As discussed above, Section 5.26 provides that Unisys's representations and warranties to Molina were limited to those "expressly contained in this Article V *or in any other document or instrument delivered by Seller pursuant to this Agreement.*" (*Id.* at pp. 36-37 (emphasis added)). Unisys argues that the only documents "delivered by Seller pursuant to" the APA were the closing documents, such as the Officer's Certificate, the Bill of Sale, "and other negotiated, formally executed, legally binding documents between Unisys and Molina." (D.I. 259, p. 18). This argument fails in light of Section 12.11 of the APA, which broadly defines the term "delivery":

> For purposes of this Agreement, references to the term "delivered by Seller," "delivered to Buyer" or "furnished or made available to Buyer" or similar

6

> expressions shall mean that Seller has: (a) posted such materials to the Data Room and has given Buyer and its Representatives access to the materials so posted, (b) set forth such materials in the Schedules; or (c) has otherwise made such materials available in writing (whether tangible or electronic) to Buyer.

(D.I. 259, Ex. A, p. 60). Section 7.2 of the APA details Unisys's obligations with respect to due diligence, specifying in part that:

> Seller shall also provide Buyer with monthly financial statements, operating reports and management reports for the Business in the form prepared by Seller in the ordinary course and all material correspondence with customers of the Business. Seller shall timely furnish to Buyer such financial and operating data and other information regarding the Business and the Assets that Buyer may from time to time reasonably request.

(*Id.* at p. 40). Section 7.2 imposes an affirmative requirement on Unisys to deliver certain documents to Molina, and those documents fall within the literal scope of "any other document or instrument delivered by Seller pursuant to this Agreement" under Section 5.26.

If Unisys wanted to preclude Molina from relying on any extra-contractual representation or warranties, it could have negotiated for a clear and unambiguous anti-reliance clause in the APA itself.[1] In the absence of such a clause, Paragraph 9 of the CA alone is insufficient to preclude Molina's reliance on representations made in written documents delivered pursuant to the APA. For these reasons, Unisys's Motion for Summary Judgment is denied, and Molina's Cross-Motion for Summary Judgment is granted to the extent that Molina may include as part of its Count I fraud case evidence that it relied upon "representations and warranties expressly contained . . . in any . . . document or instrument delivered by [Unisys] pursuant to [the APA]."

---

[1] Unisys suggests that extrinsic evidence makes clear what the parties intended (D.I. 292, p. 4, n. 2). If there is sufficient ambiguity that resort must be made to extrinsic evidence, then the anti-reliance argument is going to fail. The anti-reliance disclaimer must be unambiguous. *See FdG*, 131 A.3d at 861.

7

### B. Defendant's Motion for Leave to File a Surreply

Unisys has also moved for leave to file a Surreply in response to Molina's Reply Brief. (D.I. 306). Unisys's Motion and proposed Surreply focus solely on the issue of whether the language in Paragraph 9 of the CA is written from Molina's perspective rather than Unisys's. In light of the foregoing discussion, this point is moot. Therefore, the court will dismiss this motion.

### IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment is **DENIED**. Plaintiff's Cross-Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Leave to File a Surreply in Support of Unisys's Motion for Summary Judgment is **DISMISSED** as moot. An appropriate order will be entered.